## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

## SOUTHERN DIVSION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>(1) ANDRE LEE SCOTT,<br>(2) ADOLFO VERDUGO LOPEZ,<br>(3) MANUAL ARNULFO BARAJAS,<br><br>Defendants. | 2:17-CR-20489-TGB<br><br><br><br>**ORDER DENYING<br>DEFENDANTS' MOTIONS<br>TO SUPPRESS**<br>(DKTS. 73, 86, 87, 88, 89, 90) |

Defendants Andre Lee Scott, Adolfo Verdugo Lopez, and Manual Arnulfo Barajas are each charged with conspiracy to distribute controlled substances and possession with intent to distribute controlled substances (Dkt. 53). They now move to suppress evidence seized during the execution of a search warrant on a condominium in Novi, Michigan (Dkts. 73, 87, 89). Defendant Scott also moves to suppress location data collected

from a cellular phone (Dkt. 86).[1] The Government responded to Defendants' motions (Dkts. 85, 100, 108) and the Court heard oral argument on March 8, 2018. For the reasons set forth below, Defendants' motions to suppress are **DENIED**.

# I. BACKGROUND

## *A. Search Warrant for the Condominium on Joyce Lane*

On June 29, 2017, Drug Enforcement Administration (DEA) Special Agent Michael Reamer submitted to Magistrate Judge Anthony Patti an application for a search warrant of a condominium unit located at 42284 Joyce Lane, Novi, Michigan. The affidavit set forth the following information.

On March 24, 2017, DEA agents seized 600 grams of heroin after a drug transaction that occurred in the parking lot of a Wal-Mart in Novi, Michigan. Agents were able to monitor this drug transaction in real time because they had a Title-III, court-authorized wiretap on the individual who received the heroin (hereafter, the "Arrestee") and who was arrested

---

[1] Defendant Verdugo also moved to suppress certain statements that he made to the police after being arrested (Dkt. 90). During the hearing, Defendant Verdugo's attorney indicated that he was withdrawing this motion. Thus, this motion is **DENIED**.

shortly after driving away from the Wal-Mart.[2]    The seized heroin was contained in an otherwise empty Sony PlayStation box.  Following the March 24 seizure, agents sent a subpoena to Sony requesting any information concerning the serial number (MC712850856) printed on the PlayStation box.  Sony responded that the PlayStation was purchased with cash at the same Novi Wal-Mart on March 15, 2017 (nine days before the heroin seizure).  Agents then contacted Wal-Mart security, reviewed security video footage, and discovered that the purchaser of the PlayStation was an unknown black male, 20-30 years of age, driving a silver SUV (Affidavit, ¶ 5).

The Sony subpoena response also stated that the PlayStation associated with that serial number was activated by a "James Clover" from Rialto, California.  *Id.*  Agents were unable to further identify or locate Clover.  Sony also identified three credit cards (used to activate the PlayStation) for two additional individuals – Vincent Johnson (San Bernadino, California), and "Manjaro" (Victorville, California).  The affidavit

---

[2] Under a stipulated protective order (Dkt. 94), the Arrestee's identity has been disclosed to defense counsel, but has been withheld from Defendants and the public at this time.  The Title III interception order was not directed at Defendants and none of the information thus far provided to the Court indicates that any of Defendants' calls were intercepted.  In any event, the instant motions do not challenge the basis of the wiretap order.

states that agents were unable to further identify or locate Johnson, and that they believed this was a false name.  However, agents believed that "Manjaro" was Manjaro Chaka Johnson (*Id*. ¶¶ 6-7).  The relevance of Manjaro's specific identity is not explained further in the affidavit.

Sony also reported that the "IP address" utilized by the PlayStation was associated with internet service provider Brighthouse Network, LLC.  An IP address, or Internet Protocol address, is a set of numbers that electronic devices such as computers and laptops use to connect to the Internet.  During an Internet session, a unique IP address is assigned by an internet service provider for any device that is connected to the internet.  SA Reamer subpoenaed Brighthouse, the provider who owned that IP number, and learned that the number was assigned to an internet account registered to a Matthew Maccage, and active at the Joyce Lane condo that was the target of the search warrant at issue (*Id*. ¶ 8).  Agents were unable to further identify or locate Maccage, and believed that this was also a false name (*Id*. ¶ 9).

After interviewing the Arrestee, reviewing the calls intercepted over the wiretap during the March 24 drug deal, and considering surveillance, agents subpoenaed the ride-sharing service Uber Technologies,

4

Inc. ("Uber"), believing it was used by the person who delivered the heroin during the March 24 drug deal at the Wal-Mart (Id., ¶ 10). The returns from Uber linked Defendant Scott's Uber account[3] to the Joyce Lane condo and heroin delivery at the Wal-Mart on March 24, 2017. Specifically, Uber records indicated that, on March 24, Defendant Scott's Uber account listed two scheduled pick-ups (at 6:54 p.m. and 7:08 p.m.) from the Joyce Lane condo, although the records listed no corresponding drop-offs following these two pick-ups. Defendant Scott's Uber account records further showed a pick-up from the Wal-Mart (at 8:19 p.m.), and then a drop-off (at 8:30 p.m.) back at the Joyce Lane condo (*Id.*, ¶¶ 10-12). These Uber trips match the time (approximately 7:20 p.m.) of the heroin delivery to the Arrestee in the Wal-Mart parking lot. Again, agents know the precise time of the exchange because of the wiretap on the Arrestee's phone, which intercepted conversations of the Arrestee discussing the drug deal as it was happening (*Id.* ¶ 13, FN1).

---

[3] The Uber account identified was registered to "Andre Scott," and listed a telephone number of 480-678-7581. The Government does not contend that Defendant Scott himself was the person who delivered the heroin. But, the Government believes that his Uber account was used to arrange for the transportation of the heroin to the Wal-Mart. Agents were able to fully identify Defendant Scott through records received in response to subpoenas sent to Western Union and MoneyGram, which indicated that Scott used the same phone number from his Uber account to wire money to others.

Finally, another subpoena to Brighthouse (returned on June 9, 2017) confirmed that the previously identified IP address was still active at the Joyce Lane condo, and that IP address was linked to the same subscriber information it had on March 24 (*Id.*, ¶ 13).  On June 24, 2017, Magistrate Judge Patti authorized a search warrant for the Joyce Lane condo.  The warrant authorized agents to seize: drug paraphernalia and packaging materials, drug notes and ledgers, cash, items identifying the condo's occupants, travel documents, cellular phones and computers, and safes and luggage.  Notably, the list of items sought did *not* include controlled substances.  The facts in the affidavit suggested probable cause that paraphernalia, packaging materials, drug ledgers, travel documents, cell phones and computers, safes and were likely to be present at the location, but not necessarily heroin.

The warrant was executed on July 10, 2017 at approximately 9:30 a.m.  Upon entering the Joyce Lane condo, agents discovered all three Defendants (Scott, Lopez and Barajas) inside (Dkt. 100; Ex. 1; DEA Report of Search).  On a dining room table, agents found nine brick-shaped packages of suspected heroin.  *Id.*  In the bedroom closet, agents found 23 bricks of suspected heroin, one bag of suspected narcotics, and a very

large quantity of cash. *Id.* Agents also searched a rental vehicle parked on the street in front of the condo, allegedly rented by Defendant Scott. In Scott's rental car they found one brick of suspected narcotics[4] under the front passenger seat. *Id.* Agents also found the PlayStation in the condo, with the same serial number that the search warrant affidavit identified as having been on the PlayStation box in which the heroin was delivered to the Arrestee on March 24, 2017. *Id.* Defendant Scott was carrying three cell phones, Defendant Lopez was carrying one cell phone, and Defendant Barajas was carrying one cell phone. *Id.* Agents also discovered an additional cell phone in a bathroom garbage can; Defendant Barajas was in that bathroom when agents first entered the condo. *Id.* In the kitchen, agents found a red digital scale. *Id.* Finally, agents seized numerous documents—both from the condo and from a red Dodge Charger (allegedly rented by Defendant Barajas) parked in an attached garage. *Id.*

---

[4] Later determined to be one kilogram of cocaine.

All told, agents seized a combined 30+ kilograms of fentanyl, heroin, and cocaine, along with over $500,000 cash, from the Joyce Lane condo. All three Defendants were arrested at the scene.

## B. Search Warrant for a Cellular Telephone

On July 5, 2017, DEA agent Jeremy Fitch submitted an application for a search warrant to Magistrate Judge David Grand, seeking site-location data from an AT&T Wireless cell phone (480-678-7581) associated with Defendant Scott. This cell phone number was associated with Defendant Scott's Uber account, which was used at the time of the heroin delivery in March 2017. The affidavit set forth the same factual summary contained in the Joyce Lane condo warrant application (the chain of facts linking the Arrestee, PlayStation, Wal-Mart, Uber, Brighthouse, etc).

This affidavit also included information that the AT&T subscriber for the target phone was Eileen Mata, from Mesa, Arizona and that as recently as June 28, 2017, the cell phone made a call to 248-313-8004, which is the number for "Brownstones Apartment Complex," the property

management company for the Joyce Lane condo. Based on this infor-

mation, Magistrate Judge Grand approved the warrant on July 5, 2017,

for a period of thirty days.

## II. ANALYSIS

As noted above, all three Defendants move to suppress the items

seized during the search of the Joyce Lane condo. Defendant Scott also

moves to suppress the site-location data gleaned from the warrant for

AT&T cell phone. Defendants' argue that the warrants were not sup-

ported by probable cause, lacked particularity, or were stale. Defendants

also request a *Franks* hearing. Although Defendants note that these mo-

tions were drafted and filed prior to receiving complete discovery produc-

tion from the Government,[5] on December 21, 2017, the Court ordered the

Government to provide full sets of discovery to each individual Defendant

(Dkt. 82). The Court will therefore not address Defendants' arguments

concerning missing materials.

---

[5] For instance, Defendant Barajas argues that the warrant application did not include
Attachment A (the location of the search) or Attachment B (the items to be seized)
(Dkt. 88 at 9). These attachments were, however, presented to the Magistrate Judge.

The Government filed briefs opposing Defendants' suppression arguments. The Government also argues that the Defendants lack standing to challenge the search of the Joyce Lane condo because they were merely temporary visitors to the condo, not renters, residents or overnight guests, and therefore none of them had any reasonable expectation of privacy there.

### A. Standard of Review

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no [w]arrants shall issue, but upon probable cause, supported by [o]ath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The "chief evil" deterred by the Fourth Amendment is the physical invasion of the home. *Payton v. New York*, 445 U.S. 573, 585 (1980); *Thacker v. City of Columbus*, 328 F.3d 244, 252 (6th Cir. 2003). Indeed, the right of a citizen to retreat into the home and "there be free from unreasonable governmental intrusion" stands at the core of the Fourth Amendment. *Kyllo v. United States*, 533 U.S. 27, 31 (2001) (quoting *Silverman v. United States*, 365 U.S. 505, 511

(1961)). "One of the touchstones of the reasonableness requirement is that the police must generally obtain a warrant based upon a judicial determination of probable cause before entering the home." *Ziegler v. Aukerman*, 512 F.3d 777, 785 (6th Cir. 2008). The job of the magistrate judge presented with a search warrant application is "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit ..., there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "There must, in other words, be a nexus between the place to be searched and the evidence sought." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc) (internal quotation marks omitted).

"A court must look to the 'totality of the circumstances,' including a confidential informant's 'veracity, reliability, and basis of knowledge,' in order to answer 'the commonsense, practical question' of whether an affidavit is sufficient to support a finding of probable cause." *United States v. May*, 399 F.3d 817, 822 (6th Cir. 2005) (quoting *Illinois v. Gates*, 462 U.S. 213, 230 (1983)). Although the court is "limited to examining the information contained within the four corners of the affidavit," *United*

*States v. Dyer,* 580 F.3d 386, 390 (6th Cir. 2009), line-by-line scrutiny of the underlying affidavit is improper when reviewing the issuing judge's probable cause determination. *See United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (en banc).

### B. Standing

The Government first challenges all three Defendants' standing to contest the search of the condo at Joyce Lane. A person has standing to challenge the search of location if he or she has a reasonable expectation of privacy in the residence. *See United States v. Washington*, 573 F.3d 279, 282–83 (6th Cir. 2009). To establish such an expectation, Defendants must show: (1) that they had a subjective expectation of privacy; and (2) that their expectation was objectively reasonable. *See United States v. Pollard*, 215 F.3d 643, 647 (6th Cir.), cert. denied, 531 U.S. 999 (2000). An expectation is objectively reasonable only when it is one that "society is prepared to recognize as legitimate." *Ibid.*

The Sixth Circuit has already considered the question of whether overnight guests have standing under the Fourth Amendment. In *Pollard*, the court of appeals held that nearly all overnight guests, even those

who are temporarily occupying a common area in the apartment not considered private from other residents, have a reasonable expectation of privacy protected by the Fourth Amendment. *Id.* at 647–48 (holding that an occasional overnight guest who was permitted to be in the residence alone and who kept personal belongings in a closet in the living room had a reasonable expectation of privacy). Defendant Scott states in his reply that he was an overnight guest at the condo (Dkt. 92, Pg ID 704). The Government offers no evidence challenging this assertion. Accepting Defendant Scott's statement that he was an overnight guest (corroborated somewhat by the fact that Scott's cell phone called the property management company for the condo shortly before the search and was also tied to the Uber account which provided transportation from the Wal-Mart to the condo in March of 2017), the Court concludes that Defendant Scott had a reasonable expectation of privacy in the Joyce Lane condo and therefore has established that he has standing to contest the search.

The evidence is less supportive of the other Defendants' claims of standing. Airline tickets discovered during the search indicated that Defendants Lopez and Barajas flew into Detroit from Los Angeles on the morning of the search, and that they were scheduled to fly back to Los

Angeles in the evening that same day. They were leaving, not staying over. Moreover, neither Lopez nor Barajas have asserted that they intended to be overnight guests at the condo. In certain cases, the Sixth Circuit has recognized that non-overnight guests who have been authorized to store items in a residence may have standing to challenge a search. *See United States v. Waller*, 426 F.3d 838, 844 (6th Cir. 2005) (holding that a transient person who was never an overnight guest had a reasonable expectation of privacy in a friend's apartment where he showered, changed clothes, and kept some personal possessions). Defendants Lopez and Barajas do not argue that they kept any items in the condo. Indeed, Defendant Lopez's motion to suppress (Dkt. 89) offers no basis for finding he had a reasonable expectation of privacy in the condo. Thus, the Court finds that Defendant Lopez was merely a visitor to the condo; he had no reasonable expectation of privacy there and no standing to contest the search.

Defendant Barajas offers slightly greater evidence of a connection to the condo. He points out that the Government previously argued during a bail hearing that it had evidence that Defendant Barajas – at some point in the past – ordered food to the condo through the online meal-

delivery service "GrubHub," and that at the time of the search, Defendant

Barajas's rental car was parked in the condo's attached garage. These

two limited facts, however, must be weighed against the solid evidence of

the airline tickets showing that Barajas was departing that day and

would not be staying overnight. There is no basis to conclude that Bara-

jas was an overnight guest, resident, owner of the condo, or that he was

authorized to store his property at the condo. Rather, the evidence shows

that Barajas, like Lopez, was a temporary visitor. These facts are insuf-

ficient to establish a reasonable expectation of privacy in the condo for

Defendant Barajas. Thus, he likewise does not have standing to chal-

lenge the search of the condo.

As stated above, however, Defendants Lopez and Barajas each were

carrying cell phones on their persons which were also seized during the

search. With respect to those cell phones, it is clear that Lopez and Ba-

rajas have standing to challenge their search and seizure.[6] Indeed, "it is

---

[6] As to Defendant Barajas, there is a distinction between his standing to challenge
the search of the cell phone found in his possession and his standing to challenge the
search of the cell phone that was retrieved from the waste basket of a bathroom he
recently occupied. "There is no reasonable expectation of privacy in an object after it
has been thrown away, and the Fourth Amendment offers no bar to its seizure."
*United States v. Dillard*, 78 Fed. App'x 505, 512 (6th Cir. 2003).

self-evident that the [d]efendant had a legitimate expectation of privacy in his person and, thus, may challenge the search of himself." *United States v. Thornton*, 493 F. Supp. 2d 1024, 1031 (S.D. Ohio 2007). But, Defendants Lopez and Barajas's challenges to the seizure of their phones fail for other reasons, discussed below.

### C. The Warrants Were Supported by Probable Cause

The Court next considers whether the Joyce Lane search warrant was supported by probable cause. The Court finds that it was.[7]

The key elements of the search warrant application were the facts and circumstances of the March 24, 2017 drug deal at the Wal-Mart in Novi, Michigan. Considering the totality of the circumstances, multiple facts lead to a reasonable conclusion that the Joyce Lane condo was connected to a large-scale drug trafficking operation. First, agents seized 600 grams of heroin – a significant amount – from the Arrestee after it was delivered at the Wal-Mart. That heroin was concealed in an otherwise empty PlayStation box. The serial number on the PlayStation box was traced back to an active PlayStation unit connected to the Internet

---

[7] This conclusion applies to all of the Defendants' motions to suppress, assuming for the sake of argument that Defendants Lopez and Barajas had standing.

at the Joyce Lane condo. A reasonable inference can be drawn that whoever purchased that PlayStation was likely using it. And the records showed that the PlayStation was being used at the Joyce Lane condo. Similarly, the purchaser of the PlayStation would have been in the best position to possess and re-use the empty box to package the 600 grams of heroin that was delivered to the Arrestee. The fact that the PlayStation (purchased with cash from the same Wal-Mart) was connected to the Internet in a condo located only about 3 miles from that Wal-Mart, and that heroin was delivered to that Wal-Mart inside that PlayStation's unique, serial-numbered box, allows a reasonable inference of a nexus between the 600 grams of heroin and the condo.

The Brighthouse Internet service account connecting the PlayStation to the internet was active and unchanged at the Joyce Lane condo over the entire course of the investigation. Thus, it was reasonable to infer that the people in control of the Joyce Lane condo at the time when the March 2017 Wal-Mart drug deal took place were still in control in June 2017 when the search warrant was being sought. Both the intercepted calls from the wiretap and statements from the Arrestee lead the agents to investigate whether Uber was used to transport the drugs to-

or-from the Wal-Mart. Records from Defendant Scott's Uber account on the day of the drug deal showed two pick-ups at the Joyce Lane address (6:54 p.m. and 7:08 p.m.) with no drop-offs, and one pick-up at the Wal-Mart (8:19 p.m.) with a drop-off at the Joyce Lane condo (8:30 p.m.); time-frames that correlate with the time when the heroin was delivered. This provides further evidence of a connection between the 600 grams of her-oin delivered to Wal-Mart and the Joyce Lane address. Finally, the cell phone number connected to Defendant Scott, whose Uber account was used for transportation from the Wal-Mart to Joyce Lane on the evening of the drug deal, was also the cell phone that called the property manage-ment company for the Joyce Lane condo. The link also drew a connection between the condo and the drug trafficking. Taken as a whole, this evi-dence provided sufficient probable cause to justify a search of the Joyce Lane condo for evidence of heroin distribution from that residence.

Defendants' motions also raise other miscellaneous challenges to the warrants. Defendant Scott challenges the affidavit's reliance on in-formation gleaned from the Arrestee, who Defendant Scott characterizes as an informant. Notably, the affidavit presented to the Magistrate

Judge included the name of the Arrestee. This was not a nameless "informant," but an identified person whose identity was verified because he or she was arrested. "An informant's tip is considered to have greater reliability, and therefore to be more supportive of a finding of probable cause, if the affidavit avers that the name of the confidential informant has been disclosed to the issuing judge." *United States v. May*, 399 F.3d 817, 823 (6th Cir. 2005); *citing United States v. Helton*, 314 F.3d 812, 820 (6th Cir. 2003) ("Anonymous tips ... demand more stringent scrutiny of their veracity, reliability, and basis of knowledge than reports from confidential informants"). Since the Arrestee was identified by name in the warrant application, the information provided by the Arrestee merits greater weight. Furthermore, the Arrestee in this case was not acting as an "informant" in the traditional sense. There is no information in the affidavit that the Arrestee had ever been to the Joyce Lane condo, or had any knowledge of that property's potential connection to drug dealing. Rather, the limited information gleaned from the Arrestee – that he or she received 600 grams of heroin in a PlayStation box from an unknown black male, who travelled to the Wal-Mart via Uber – was independently corroborated by other objective evidence that was recited in the warrant

applications.  First, at the time it was seized by the DEA, the 600 grams of heroin was actually concealed in a PlayStation box in the Arrestee's car.  Second, subpoenas sent to Uber indicated that pick-ups and drop offs to and from the Joyce Lane condo and the Wal-Mart occurred close in time to the drug transaction.  Third, the Arrestee's statements were corroborated by the intercepted calls and the fact that he was under surveillance.  The warrant was not simply based on the Arrestee's statements to the police, standing alone.  Rather, independent investigation by the DEA linked the Joyce Lane condo to the March 2017 drug deal. Defendant Scott's challenge to the Arrestee's reliability is not well-taken.

Defendants also challenge the searches of their rental vehicles and the seizure of their cell phones, but these arguments fare no better.  Although the warrant did not explicitly authorize the search of vehicles, any vehicles within the curtilage of the residence fall within the scope of the warrant's authorization.  *See, e.g., United States v. Thompson*, 91 F.3d 145 (6th Cir. 1996); *United States v. Combs*, 468 F.2d 1390 (6th Cir. 1972) (cited by *United States v. Biles*, 100 Fed. App'x 484, 493 (6th Cir. 2004)). At the time of the search, Defendant Barajas's rental car was parked not just within the "curtilage" of the condo, but fully within the attached,

private garage.  Thus, agents had the authority to search the red Dodge Charger, under the scope of the warrant which authorized a search of the condo and all of its contents.

The search of Defendant Scott's rental car – which was parked in the street in front of the condo – is a closer call.  However, the Court finds that this search was proper, given that Defendant Scott was arrested at the scene, based upon evidence independent of what was found in his car. All three Defendants were discovered in the condo at the time of the search, where kilogram quantities of heroin were in plain view, and all three were then arrested.  "Once an officer determines that there is probable cause to make an arrest, it is reasonable to allow officers to ensure their safety and to preserve evidence by searching the entire passenger compartment" of vehicles found at the scene.  *Thornton v. United States*, 541 U.S. 615, 623 (2004).  It makes no difference whether Defendant Scott "was inside or outside the car at the moment that the officer first initiated contact with him."  *Id.* at 622.  Moreover, even if *Thornton* is limited to the situation where the suspect is a "recent occupant" of the vehicle, the searching officers at the Joyce Lane condo had a drug-sniffing dog (K-9 Thor), who alerted to the presence of narcotics in Defendant

Scott's rental car (Dkt. 100, Ex. 1, Pg ID 771 ¶ 3).  It is well-settled law that "a positive indication by a properly-trained dog is sufficient to establish probable cause for the presence of a controlled substance." *United States v. Torres–Ramos*, 536 F.3d 542, 554 (6th Cir. 2008); *see also Illinois v. Caballes*, 543 U.S. 405 (2005) (holding that the use of a "well-trained narcotics-detection dog" to sniff around the exterior of a vehicle during a traffic stop does not implicate Fourth Amendment privacy interests).  Under the automobile exception, police officers may conduct a warrantless search of a vehicle if they have "probable cause to believe that the vehicle contains evidence of a crime." *United States v. Lumpkin*, 159 F.3d 983, 986 (6th Cir.1998) (citations omitted). Defendant Scott's challenge to the search of his car is not well-taken.

As to Defendants' cell phones, the warrant explicitly authorized the seizure of cell phones.  But, according to Defendants Lopez and Barajas, they were just innocent bystanders, who had the misfortune of making a social call to the condo at time of the raid.  Thus, they argue, the police had no cause to search them and seize their belongings.  The fact that Defendants Lopez and Barajas were visitors to the condo is of no import.  Again, officers had probable cause to arrest all three Defendants right

then and there, based on the fact that they were discovered in a condo with multiple kilograms of heroin in plain view. The search-incident-to-arrest rule permits an officer to conduct a full search of an arrestee's person before he is placed under lawful custodial arrest as long as "the formal arrest follow[s] quickly on the heels of the challenged search of ... [his person]" and the fruits of that search are not necessary to sustain probable cause to arrest him. *United States v. Montgomery*, 377 F.3d 582, 586 (6th Cir. 2004), cert. denied, 543 U.S. 1167 (2005). Thus, Defendants' challenge to the seizure to their cell phones is not well-taken. It should also be noted that, before Defendant Barajas's iPhone was forensically examined, a separate warrant was obtained authorizing that examination.[8] That warrant provided an independent basis to examine Defendant Barajas's iPhone.

At bottom, the Court reviews an affidavit "on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *United States v. Hines*, --- F.3d ---, No. 17-5893, 2018 WL 1417545, at *5 (6th Cir. Mar. 22, 2018). Here, the facts set forth in

---

[8] The record does not indicate whether the cell phones that were seized from Defendants Scott and Lopez were forensically examined pursuant to separate search warrants or not.

the affidavit established probable cause. The totality of the circum-

stances convinces the Court that this affidavit demonstrated a specific

and concrete nexus between the Joyce Lane condo and the evidence

sought. The same analysis applies to the affidavit submitted in support

of the warrant for Defendant Scott's cell phone site-location data.

In sum, there were sufficient facts set forth in the affidavits "to infer

a fair probability of finding contraband or evidence of a crime at that par-

ticular place." *United States v. Brown*, 828 F.3d 375, 384 (6th Cir. 2016).

Defendants' challenges to the warrants' probable cause are not well-

taken.

### D. The Warrant was not Stale, and Adequately Described the Items Sought

Defendants also argue that the Joyce Lane warrant was stale, and

that it failed to adequately describe the evidence sought to be recovered.

These arguments are also not well-taken.

The probable cause required for a search warrant "'is concerned

with facts relating to a presently existing condition.'" *United States v.*

*Spikes*, 158 F.3d 913, 923 (6th Cir.1998) (quoting W. LaFave, Search and

Seizure § 3.7 at 338 (3d ed. 1996)). "Thus, the critical question is whether

the information contained in the affidavit, when presented to the … judge, established that there was a fair probability that [evidence] would still be found at [the location of the search]." *Id.* In other words, a warrant is stale if the probable cause, while sufficient at some point in the past, is now insufficient as to evidence at a specific location. *See United States v. Abboud*, 438 F.3d 554, 572 (6th Cir. 2006).

In arguing that the warrant was stale, Defendant Barajas posits that drugs are "a perishable commodity that must be sold and consumed in prompt fashion. Thus, the chance encounter of heroin found inside the PlayStation box on March 24, 2017 bears no connection to an ongoing conspiracy to sell drugs out of the [condo]" (Dkt. 87, at 22). However, the warrant sought almost exclusively records relating to drug activity or identifying the individuals who occupied or controlled the condo – such as, notes, receipts (perhaps for the PlayStation purchase), drug ledgers (which could have included information about the March 24 heroin delivery), money orders, cashier's checks, wire transfer receipts (as seen with Defendant Scott's use of Western Union and MoneyGram), charge card receipts (including the credit cards associated with the PlayStation's ac-

tivation), leases and rental agreements (which might have helped identify the purchaser of the PlayStation, or the individual who rented the condo), and phone and utility statements – and explained the probability that these items would still be found there. These items are of a more permanent nature, and are not as transient as drugs. *See United States v. Abboud*, 438 F.3d 554, 574 (6th Cir. 2006) (rejecting argument that probable cause was stale, and noting that "by nature one keeps business and financial records for extended periods of time"). Defendants' arguments that probable cause was stale or that the warrant insufficiently described the items sought are not well-taken.

### E. The Good Faith Exception

Finally, even assuming for the sake of argument that the warrants were somehow defective, I find that the good faith exception would preclude the exclusion of the evidence at issue. The Supreme Court created an exception to the application of the exclusionary rule because "[c]ourts should not ... suppress 'evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant.'" *United States v. Carpenter*, 360 F.3d 591, 595 (6th Cir. 2004) (en banc) (quoting *United*

*States v. Leon*, 468 U.S. 897, 922 (1984)). "[C]ourts presented with a motion to suppress claiming a lack of probable cause must ask whether a reasonably well trained officer would have known that the search was illegal despite the [issuing judge's] decision. Only when the answer is 'yes' is suppression appropriate." *United States v. White*, 874 F.3d 490, 496 (6th Cir. 2017) (internal quotation marks and citations omitted).  The DEA agents in this case reasonably relied on the warrants approved by the Magistrate Judge.  Nothing from the face of the search warrants or the nature of the affidavits would have suggested to these officers the warrants were defective or the searches illegal.  As such, even assuming that there was some defect in the warrants, the good faith exception would apply, and allow the introduction of the evidence seized.

## CONCLUSION

For the reasons set forth above, Defendants' motions to suppress (Dkts. 73, 86, 87, 89) are each **DENIED**.

**SO ORDERED**.

s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

Dated:  May 14, 2018

## Certificate of Service

I hereby certify that this Order was electronically submitted on May 14, 2018, using the CM/ECF system, which will send notification to each party.

s/A. Chubb
Case Manager